CAROLINA PORTLAND CEMENT Co., a corporation, and CHARLES H. JOHNSON, *Appellants*, v. CARL J. BAUMGARTNER, MARIE A. BAUMGARTNER, his wife, THE HEARN. CONSTRUCTION COMPANY, a corporation, and JOSEPH NEEDHAM, *Appellees*.

Division A.

Opinion filed May 5, 1930.

*Martin H. Long,* for Appellants;

*James Royall, Milam, McIlvaine & Milam* and *Stockton, Ulmer & Murchison,* for Appellees.

BROWN, J.—This is an appeal by the complainant in the court below from an order of the chancellor denying the application of complainant for the appointment of a receiver in foreclosure proceedings. The bill for foreclosure,

which was sworn to, was filed in October, 1928. It alleged that the defendants, Baumgartner and wife, on the 25th day of November, A. D. 1927, executed and delivered to the Hearn Construction Company their note for twenty-five thousand, two hundred and fifty dollars ($25;250.00). To secure its payment they also contemporaneously executed and delivered their mortgage encumbering the lands described in the bill of complaint. The note and mortgage were first assigned to the Atlantic National Bank, but the bill alleged that they are now held and owned by the complainants.

The bill furthermore alleged that on the property described in the mortgage there was a large apartment house from which the principal defendant, Baumgartner, was collecting the rents. The property was subject to a first mortgage of forty-two thousand, five hundred dollars ($42,500.00). Baumgartner failed to pay the interest due thereon in July, 1928, and to prevent foreclosure, the complainant, Carolina Portland Cement Company, paid it. He likewise failed to pay the interest due August 25th, 1928, on this, the second mortgage, when it matured.

The bill alleged that the second mortgage, foreclosure of which was thereby sought, contained an express pledge of the rents, etc., the following language being used:

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, *and the rents, issues and profits thereof,* and also the estate, right, title, interest, homestead, dower and right of dower, separate estate, property, possession, and all claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in and to the same, and every part thereof, with the appurtenances." (Italics supplied.)

There was also a provision for the appointment of a receiver, as follows:

"That in case any default is made by the party of the first part, as mentioned in the preceding paragraph, and a suit in equity is instituted by the party of the second part to enforce his rights, the party of the second part shall be entitled to apply to the court having jurisdiction of such suit for the *appointment of a receiver of all and singular said property, and the rents, issues and profits thereof.* And it is further covenanted and agreed that thereupon such court shall forthwith, as a strict matter of right in the party of the second part, appoint a receiver of all such property with the usual powers and duties including the power to rent said property and to collect the rental thereof and therefrom; the revenue derived from said property to be applied by such receiver as required by law and under the direction of said court." (Italics supplied.)

Relying on the foregoing clauses and the facts above stated, the complainants applied to the lower court for the appointment of a receiver. Several days after the date noticed for the hearing of such application, but two days prior to the making of the order, defendant, Baumgartner, filed his sworn answer. The application for appointment of a receiver was denied, and this appeal is from the order of denial.

The bill contained no allegation that the defendant mortgagor was insolvent or that the security afforded by the property mortgaged was inadequate.

The briefs and argument of counsel for both appellants and appellees assume that the only question in the case is whether or not the complainants, without making any

showing as to the insolvency of the mortgagor or the inadequacy of the security, were entitled to the appointment of a receiver, by virtue of those clauses in the mortgage sought to be foreclosed which expressly pledged the rents, issues and profits of the mortgaged premises as security for the debt, and providing for the appointment of a receiver.

The chancellor rendered his order without opinion, but it is assumed by counsel that the above question, and the decision reached thereon, was the sole determinative consideration upon which the order appealed from was based. This assumption may be correct, and we would hardly be warranted in adjudicating this appeal without some consideration of the above stated question, which has been ably and earnestly argued by counsel for both sides, though, for reasons hereinafter stated, the chancellor may have been influenced in reaching his decision to deny the receiver by certain allegations in the defendant's verified answer.

Appellant contends that where two persons are *sui juris* they have the right to make any contract which is not in violation of law or of rule of court, and that the courts should approve and enforce any such contract and not destroy it. That this contract was either good, or it was void; if good, the court erred in not enforcing it; if void, the sooner investors find it out, the better. That even though the provision as to the appointment of a receiver should not be held to be absolutely controlling on the courts, the courts should accord it considerable weight, and no objections from a party who has thus consented to such appointment should be heard. That if ever a case demanded a receivership, this is that case. That the mortgagors are collecting nearly a thousand dollars a month in gross rentals, which rents are by the contract expressly

made a part of the security, yet they refuse to pay the interest on either the first or second mortgages, knowing that the second mortgagees cannot afford to let the first mortgage be foreclosed and that the holders of the second mortgage must pay all interest coupons as they become due, thereby increasing their burden. That in such a case the court should have respected the contract provisions and appointed a receiver to collect the rents pending the foreclosure proceedings, which action could have harmed no one; that this should have been done, although there was no allegation or evidence of insolvency, which was not necessary under the contract. That under such circumstances, the burden of showing insolvency and inadequacy of security should not be placed upon the complainant. That with mortgages aggregating $67,750.00 and several thousand dollars of interest, the building being insured, according to the bill, for $60,000.00, the value of such an equity is purely problematical, and the contract saying nothing about insolvency or inadequacy of security, the court below erred in refusing to appoint a receiver under the facts alleged.

Appellees contend that the provision as to the appointment of a receiver is practically nullified by the decision of this court in Armour Fertilizer Works v. First National Bank, 87 Fla. 436, 100 So. R. 362, wherein it was held that consent of parties "cannot confer power or authority on a court to appoint a receiver in a case wherein the pleadings do not state a case for such appointment," and hence that insolvency of the mortgagor and inadequacy of security must in all cases be shown. That the appointment of a receiver in foreclosure proceedings is discretionary with the courts. That the clause pledging the rents, issues and profits has no weight, because it provides nothing further than that which the law reads into every mortgage.

We will first consider whether a mortgagor may lawfully pledge the rents and profits of real estate in a mortgage thereof, and, if so, whether such a provision possesses any significance or efficacy.

Clauses of this character are so frequently embraced in mortgages these days, that the question becomes an important one. It is also obvious that such a clause, upon default in payments due under the mortgage, cannot generally be enforced except through the medium of a receiver. Land cannot run away, and buildings may be kept insured. Hence there is generally good reason for denying a receiver of mere real estate unless waste is being committed, or there be insolvency of the mortgagor and inadequacy of the property as security. But the mortgagors, even after default, can collect the rents, and dissipate them, and the mortgagees are powerless to prevent it, although the mortgage expressly pledges the rents as part of the security, unless a receiver be appointed to impound the rents pending the foreclosure proceedings and hold them subject to the orders of the court.

It is generally held that, in the absence of a statute or agreement to the contrary, a lessee may mortgage or encumber the leasehold estate. Jones on Mortgages, 8th Ed., Sec. 990. And the owner of property can as a general rule assign the rents and profits or appropriate them to any desired purpose.

It has also been held in a number of states that the mortgagor, when there is no prohibitory statute, may pledge the rents and profits of real estate in a mortgage thereof. Indeed this appears to be in harmony with the weight of authority, though there are some cases to the contrary. See valuable note in 4 A. L. R. 1405 et seq., and Jones on Mortgages, 8 Ed., Sec. 1930. Among the states so holding are New York and Illinois. Such also is the

holding of the United States Supreme Court. See Gisborn v. Charter Oak Life Insurance Co., 142 U. S. 326, 35 L. Ed. 1029, 12 Sup. Ct. R. 277; Freedman's Savings & Trust Co. v. Shepherd, 127 U. S. 494, 32 L. Ed. 163, 8 S. C. R. 1250. In the latter case it was held that such a provision does not become practically effective until a receiver is appointed or the mortgagee goes into actual possession; that as long as the mortgagor continues in possession, he can collect the rents. See also Jones Mortgages, 8th Ed., Sec. 827; and in Section 975 of that work it is said: "In the absence of a specific pledge of the rents and profits to the mortgagee as part of his security, the mortgagor, though insolvent, may, until the foreclosure sale, or until the appointment of a receiver pending the foreclosure suit, receive them to his own use, or assign them to another." Citing a New York case.

"Rents and profits are as much property as the estate out of which they arise, and as such they are equally the subject of a mortgage." 41 C. J. 375, citing a number of cases.

In Pasco v. Gamble, 15 Fla. 562, in an able opinion by that great jurist, Justice WESTCOTT, it was held, in a case where there was no express provision in the mortgage pledging the rents and profits, that in spite of the Florida statute, providing that a mortgage is merely a specific lien upon property and that the mortgagee could not acquire possession until after foreclosure and sale, the possession of the mortgagor was subordinate to the equitable rights of the mortgagee, and that under certain conditions, such as default in payment of interest and taxes, insolvency of the mortgagor and inadequacy of the property as security, a receiver of the rents and profits should be appointed. That under such circumstances, as between the mortgagor and mortgagee, equity makes the mortgage a charge upon

the rents and profits of the mortgaged property as well as upon the property itself, "regarding the land and its produce as security for the mortgage debt." (15 Fla. 567, 568.)

If the owner of real property may, as he unquestionably can, assign away the rents and profits thereof, why may he not pledge them along with the land, thus encumbering them with a contract lien, as security for a debt? We find no valid reason in the authorities why this may not be lawfully done. In fact, while many courts, perhaps a majority of them, have been extremely reluctant to give full effect to such a provision, very few deny the lawful power of a mortgagor to so stipulate. In a few of the states, such a provision, as well as one agreeing to the appointment of a receiver, are regarded as contrary to the varying statutes existing in such states. But a pledge of the rents and profits, along with the land, as security for the mortgage debt, creating as it does a mere contract lien to secure a debt, which can only be made effective and enforceable by the appointment of a receiver by the court, does not conflict with our statute any more than the lien created by the mortgage on the land itself.

The statute, Section 5725, Comp. Gen. Laws, derived from an Act of 1853, reads: "A mortgage shall be held to be a specific lien on the property therein described, and not a conveyance of the legal title or the right of possession." But the lien exists in spite of the mortgagor's right of possession, and even this right of possession may be subordinated in equity to the protection of the mortgagee's equitable rights.

If, as was held in Pasco v. Gamble, *supra*, in cases of insolvency and inadequacy of the property as security, the mortgage, though containing no provision on the subject, will be held in equity to constitute a lien upon the rents

and profits, as well as upon the land itself, why may not
the parties, by the contract, expressly create such a lien
upon the rents and profits, which shall attach, and in
proper cases be enforced, regardless of the mortgagor's in-
solvency and in some cases perhaps regardless even of the
inadequacy of the property itself as security? We see no
reason why the courts should deny the right of a property
owner to so create a contract lien upon the rents and profits
of his property. It might well become a valuable right when
he finds it necessary to borrow money. It is his property,
and if he sees fit to encumber it and also its rents, with
a lien to secure a debt, we know of no statutory or consti-
tutional provision which prohibits him from so doing. Cer-
tainly Section 5725, Comp. Gen. Laws, does not prohibit
him from mortgaging the rents any more than the land.
It was said in Pasco v. Gamble, quoting Chancellor Kent,
that while the mortgagee's common law rights of entry and
possession were gone, the mortgage remains as a ''lien by
contract.'' If the mortgage on the realty is a mere lien by
contract, and the pledging of the rents and profits of the
realty is also a lien by contract, which may be created in
the same instrument, why should not the latter be enforced
and protected by the courts as much so as the former?
And if waste of the real estate security is in proper cases
considered good ground for the court to interpose and by
writ of injunction to restrain the mortgagor from com-
mitting such waste, why should not the security afforded,
under the terms of the contract, by the rents and profits
be also protected, by appointing a receiver in proper cases,
to prevent such rents from being wasted and dissipated by
a mortgagor in default?

Appellees contend that the position of appellant is based
upon decisions from those jurisdictions, such as Illinois
and New York, in which a mortgage is regarded as pass-

ing the legal title and right of possession as at common law, whereas our statute makes it merely a lien, with the title and right of possession remaining in the mortgagor. A review of the Illinois cases in 41 C. J., 276, shows that they have departed considerably from the common law conception, while it appears that New York, if it ever recognized the common law theory, has long since adhered to the equitable theory. And the same may be said of many of the other States which are supposed to retain the common law doctrine. In fact, in a majority of the states, partly by force of statutes and partly by the decisions of the courts, the common law doctrine has been abrogated, and has given place to the equitable theory, similar to that obtaining with us, according to which a mortgage is nothing more than a mere lien or security for a debt, passing no title or estate, nor right of possession. 41 C. J., 279, 280. Such is the holding in New York, cases from which, as well as from other States, are cited by appellant. But this mortgagor's right of possession, as we have above seen, can be subordinated in equity when necessary for the protection of the equitable rights of the mortgagee.

This theory that the appointment of a receiver of the rents and profits is dependent upon the recognition of the common law doctrine that the mortgagee is entitled to possession, was shown to be untenable in Pasco v. Gamble, *supra,* wherein Justice WESTCOTT said:

"At the outset of this investigation, controlled principally by the California decisions, our view was, that the statute, destroying all rights of possession of the mortgagee, destroyed also all his equitable rights and remedies by which a sequestration of the rents and profits of the land might be had. This view in Cali-

fornia has been condemned in Nevada, where, notwithstanding the statute gives the right of possession to the mortgagor until foreclosure and sale, the court in such a case as this sanctions the appointment of a receiver. (1 Nevada, 184.) "We are now satisfied that his right to possession was not the basis of this equity. He had no right in equity to possession as against the mortgagor, unless there were equities affecting the conscience of the mortgagor, by which his possession could be controlled for the benefit of the charge and encumbrance, and equity gave her aid when these circumstances existed, and when at law the mortgagee could not get possession, or his right thereto was obstructed or not available. The equity results from the fact that a mortgage is a charge upon the land; that the land is inadequate security for the debt; that the mortgagor is insolvent or resides out of the State; that both the mortgagor and the purchaser at the execution sale have paid no attention to arrears of interest due upon the mortgage debt, or to pay taxes then due and unpaid. This rule we deduce from the uniform action of courts of equity in analogous cases, where, as against the legal right of possession, equity will sequestrate and apply the rents and profits to a charge or encumbrance. The right to appropriate the rents and profits which equity gives the mortgagee, where a receiver is appointed at his instance, does not result from any specific pledge of such rents contained in the mortgage. Equity makes the mortgage, as between mortgagor and mortgagee, a charge upon the rents and profits whenever the mortgagor is insolvent and the security is inadequate, and especially is it the duty of the purchaser in possession to keep down the interest. As is remarked by Coote, (on Mortgages,

342, cited with approbation by Chancellor Dargan, in Matthews v. Preston, 6 Rich. Eq. 307, note,) 'although in equity the mortgagor remains the actual owner of the land until foreclosure, entitling him while in possession to the receipt of the rents and profits without account, yet equity, regarding *the land with all its produce* as a security for the mortgage debt, will restrict the right of ownership within those bounds which may not operate to the detriment or injury of the mortgagee'."

The author of the note in 4 A. L. R. 1405, has these pertinent observations to make on page 1416:

"With the general power of a court to appoint a receiver of the rents and profits in an action to foreclose a mortgage, this note is not, in general, concerned; this discussion is confined to the effect of a stipulation in the mortgage for the appointment of a receiver, or a stipulation as to rents and profits as it bears upon the appointment of a receiver. The stipulations are of two classes, viz.: (a) Those pledging the rents and profits, and (b) those providing for the appointment of a receiver. A distinction has been made between these stipulations, and the pledge of the rents and profits held to give the mortgagee more rights in regard to the appointment of a receiver than the provision that a receiver may be appointed. This distinction has not always been observed, and it seems that a stipulation for the appointment of a receiver is in effect a pledge of the rents and profits, as was the view in Bryson v. James (1888) 23 Jones & S. (N. Y.) 374.

"Assuming such stipulations to be valid, it seems clear that the condition of the mortgagor as to sol-

vency is immaterial, as is held in some of the cases discussed hereinafter. The rents and profits may be and often are a very valuable part of real estate. The mortgagee may not desire to resort to an execution against the other property of the mortgagor, assuming him to be solvent. At any rate, where the parties have expressly contracted for a lien upon the rents and profits, there seems to be no valid reason for depriving the mortgagee thereof because of the fact that the mortgaor is solvent, and the debt may be collected by execution on other property of the mortgagor. Nor should the conditions that there must be danger of loss, waste, destruction, or serious impairment of the property, sometimes prescribed as conditions precedent to the appointment of a receiver, be regarded as material where there is such a stipulation. The fact that the mortgaged property, exclusive of the rents and profits, is ample security for the debt secured by the mortgage, is of a different character. It is perhaps going too far to treat this fact as immaterial. But the stipulation should certainly relieve the mortgagee of the burden of proving that the property, exclusive of the rents and profits, is insufficient security. Before a receiver should be denied, where there is such a stipulation, the mortgagor should very clearly show that the property, exclusive of the rents and profits, is ample security. Although supported by judicial authority, the theory that a receiver will not be appointed by virtue of such a stipulation alone has many objectionable features. Notwithstanding the above-mentioned judicial authority, it is the opinion of the writer that such a stipulation should entitle the mortgagee to a receiver, unless it is shown or appears in the case that the mortgaged property, exclusive of

the rents and profits, is ample security for the debt. Not all judicial authority denies the correctness of this conclusion. In fact, it finds support in many cases. See infra, particularly the Illinois decisions, which quite generally sustain such stipulations, and give them the effect herein contended for.''

As to the argument that an express stipulation pledging the rents and profits is unnecessary, as being no more than the law writes into every mortgage of real property, it will have been observed that the constructive equitable lien on the rents and profits which courts of equity have created, is only recognized where the mortgagor in default is insolvent and the security afforded by the real property inadequate. But where the mortgage expressly pledges the rents and profits in addition to the property, as security for the payment of the debt, such a provision might in many cases be properly considered by the courts as authorizing the exercise of the discretionary power of appointing a receiver where without such express agreement a receiver would be denied, such, for instance, as cases where, although the mortgagor was not shown to be insolvent, nor the security of the property clearly inadequate, yet the security afforded by the lien on the rentals might well be impounded through a receiver pending foreclosure proceedings when it appears that such action is reasonably necessary to effectively enforce the payment of the debt secured. While it is our statutory policy to leave the mortgagor in possession until after foreclosure and sale, and equity will enforce this policy until it becomes necessary to subordinate the mortgagee's possession in order to protect the equitable rights of the mortgagee, yet when the mortgage expressly gives a lien upon the rents and profits and consents to the appointment of a receiver upon default, such stipulations should be

accorded considerable weight by the courts and will in many cases afford good grounds for the appointment of a receiver where without them a receiver might not be appointed.

Now, as to the stipulation that the mortgagee may, upon default, apply for the appointment of a receiver.

Of course, the parties cannot, by agreement between themselves confer jurisdiction upon the courts, or control the action of the courts. But they may by their contracts create rights or impose liabilities which the courts may enforce, or disregard, according to what may be found to be right and just when tested by the application of the established principles of law and equity. Thus it was held in Armour Fertilizer Works v. First National Bank, 87 Fla., 436, 100 So. R. 362, that the power to appoint a receiver is one inherent in a court of equity; one that was not a matter of right, but rested in the discretion of the court, and that it was axiomatic that consent of parties to the litigation could not confer authority on a court to appoint a receiver in a case where the pleadings do not state a cause for such appointment. That case was one where a receiver was asked in aid of a creditor's bill. But the principle is sound, and of general application. Of course, the discretion alluded to is a sound judicial discretion, the exercise of which is subject to appellate review when abused. Judicial discretion does not imply that a court may act, or fail to act, according to the mere whim or caprice of the presiding judge, but it means a discretion exercised within the limits of the applicable principles of law and equity, and the exercise of which, if clearly arbitrary, unreasonable or unjust, when tested in the light of such principles, amounting to an abuse of such discretion, may be set aside on appeal. This is "a government of laws and not of men."

While our statute provides that a mortgage does not convey the title or right of possession, the doctrine of Pasco v. Gamble that the mortgagor holds possession *cum onere* and subject to interposition by courts of equity when necessary to protect the mortgagee's equitable rights, by way of receivership or injunction, has been frequently applied by this court.

In Logan v. Slade, 28 Fla. 699, 10 So. R. 25, it was held that equity will prevent by injunction a mortgagor from impairing the value of or destroying the mortgaged property on which the mortgagee has the right to rely for the security of his debt, and if the remedy by injunction proves ineffectual, the court may appoint a receiver of the mortgaged property, which consisted of a stock of goods, and dispose of the same under its direction. In that case, no showing of insolvency or inadequacy of security appears to have been made, and such elements were not discussed in the opinion. The mortgage covered some real estate in addition to the stock of goods. The injunction and subsequent receivership were granted to prevent the dissipation of the stock of goods by the mortgagor, who was disposing of them to unsecured creditors in payment of his debts to them. But the stock of goods in that case, like the rents and profits in this case, formed a part of the security expressly pledged, and the mortgagor being in default, the court acted to prevent the wastage and misapplication of that portion of the security afforded by the goods. If the security afforded by a lien upon personal property, given in connection with a mortgage upon realty, may be protected from impairment, without a showing of insolvency and inadequacy of consideration, why not the security afforded by rents and profits of mortgaged realty when likewise expressly pledged as part of the security for the mortgaged debt?

In Graham v. Consolidated Naval Stores Co., 57 Fla. 418, 48 So. R. 743, it was held that where a mortgage, given to secure advances to the mortgagors to enable them to produce naval stores, apparently covers present leasehold lands and the crops thereafter produced thereon, and there is immediate necessity for the preservation of the mortgaged property, a receivership may be necessary, even though upon a full hearing a different construction of the mortgage might be possible. It was contended by the mortgagors that the mortgage only covered the future products of after acquired land,. and did not embrace the resin and turpentine thereafter to be produced upon the leaseholds then held. Without precluding the subsequent decision of the question thus raised in the lower court, this court, on. the appeal from the order appointing a. receiver, said that ''we are satisfied that for the purpose only of maintaining the *status quo* and preventing the destruction of the corpus of the property pending litigation, the court was justified in yielding any doubt it might entertain to the importance and necessity of conserving the plant as a going concern, which could only be accomplished through a receivership.'' It will be observed that nothing was said in that case about insolvency of the mortgagors or the inadequacy of the security, though it might be implied from the opinion that some showing might have been made in the lower court that the preservation of the *status quo* was essential to the adequacy of the security.

So, in this case the chancellor, upon the showing made by the verified bill, might well have yielded any doubt he may have entertained by reason of the allegations in the verified answer, alleging that the execution of the mortgage had been fraudulently obtained, and have appointed a receiver to impound the rents and profits pending the adjudication of such question in the due

course of the foreclosure proceedings. True it is, of course, that a receiver should not be appointed where it is apparent that the party applying will not be entitled to recover. Or, as it was expressed in Apalachicola Northern R. Co. v. Sommers, 79 Fla. 816, 85 So. R. 316, a receiver should not be appointed "unless there is strong reason to believe that the party asking for a receiver will recover."

In White Engineering Corp. v. People's State Bank, 81 Fla. 35, 87 So. R. 753, it was held that where the amended bill alleged that the mortgagor was insolvent and that the mortgaged property, an automobile, was being used in such a way as to cause such a deterioration in value as to render the security inadequate, and that the automobile was being rented for a stipulated rental, an order appointing a receiver would not be disturbed. It was also held in that case that on application for receiver, an unsworn answer is not evidence before the chancellor, thus intimating that if the answer had been sworn to it might have been so considered. It does not appear that in that case the rents and profits were pledged as security for the mortgage debt. In fact, apparently such a provision in a mortgage has never before been considered by this Court. In this connection it might be noted however, that it was held in Cone-Otwell-Wilson Corp. v. Commodore's Point T. Co., 94 Fla., 549, 114 So. R. 232, that usually the object of the appointment of a receiver in foreclosure proceedings is to preserve the security and collect and apply the rents and profits to the payment of the mortgage debt; that the amount thus impounded becomes a part of the mortgage security and remains the property of the mortgagor subject to the equitable rights of the parties, and should ordinarily be applied in advance of sale against the sum found by the court to be due, so that the mortgagor might have that much less money to raise

to redeem the property from sale. Thus the mortgagor's rights are fully protected, and very little, if any, harm can result to him from the appointment of a receiver except the added costs of the receiver's compensation.

Of course, the mere fact that the mortgage pledges the rents and profits and consents in advance to the appointment of a receiver upon default or breach of conditions, does not mean that upon such a showing alone a court of equity should appoint a receiver as a matter of course. Thus, if it were made to appear that, although in default, the mortgagor was exercising reasonably good care and management of the property and applying the receipts from rentals to the payment of the taxes and the interest on the mortgage debt as far as they would go, a receiver could do no more, and no equitable ground would exist for interfering with the right of possession, which under the statute the mortgagor retains. But where, as in this case, according to the bill, the mortgagor is receiving a large amount monthly in rents, yet failing to keep down the interest on the first mortgage, thus compelling the second mortgagee to pay such interest to prevent foreclosure of the first mortgage, and also failing to pay the installments falling due on the second mortgage, which pledged such rents and profits and agreed to the appointment of a receiver on default, such bill makes out a good case for the appointment of a receiver. Cross v. Will County Nat'l. Bank, 177 Ill. 33, 52 No. E. R. 322; Keogh Mfg. Co. v. Whiston, 14 N. Y. 344; Jones on Mortgages, 8th Ed., Sec. 1937.

The first few sentences of Section 1930 of Jones on Mortgages, 8th Ed., being Section 1516 in the 6th and 7th editions, reads as follows:

"A receiver of the rents and profits may be appointed pendente lite when the mortgage is insuf-

ficient, and the party personally liable is insolvent; or when it is provided by the deed that the mortgagee shall have the rents and profits after a default; for otherwise, since the owner of the equity of redemption, especially in all those states where the mortgagee's right of entry upon the happening of a default is taken away, is entitled to the rents and profits until a sale under decree of court and possession under it given to the purchaser, the holder of the mortgage would be deprived of a valuable part of his security. The power of a court of equity to appoint a receiver in such cases is a part of its incidental jurisdiction, not depending on any statute. The mere fact that there had been a default in the payment of the debt is no ground for the appointment of a receiver unless there be a stipulation in the mortgage that the mortgagee shall have the rents, or he is entitled to them under existing laws. Even if there be a stipulation in the mortgage that the rents and profits are included, a receiver will not be appointed, where the mortgaged premises are sufficient to satisfy the debt.''

In support of the text, numerous cases are cited, including cases from New York, Illinois, New Jersey, West Virginia, Kentucky, Mississippi, Indiana, and federal cases. But the remainder of the section quoted from, as well as portions of succeeding sections of that work, are in conflict with the principles stated in the above quotation. The varying statutes of the several states, and the efforts of the courts to reconcile the liberty of contract with the public policy established by such statutes, and yet preserve the vitality of equitable principles, has resulted in considerable apparent, as well as actual, conflict among and between the cases on this subject.

The contention of appellants also appears to be upheld by High on Receivers, 4th Ed., Sec. 643. See also First National Bank v. Ill. Steel Co., 174 Ill. 140, 51 N. E. R. 200; Ortengren v. Rice, 104 Ill. 428, and other Illinois, Indiana, Iowa, New York and Texas cases cited in 42 C. J. 123.

In Pasco v. Gamble, *supra*, it was said by Justice WESTCOTT:

"I am clear that wherever the mortgagor, legally in possession, and entitled thereto by statute or contract, refuses and fails to do any act which is necessary to the preservation of the estate, and to the doing of this act the appointment of a receiver and sequestration of the rents is necessary, that a court of equity should not hesitate to take the possession from him. Here one of the allegations is that the purchaser has failed to pay the taxes. Such tax is an annual charge upon the lands, and when a receiver is necessary to its discharge the appointment is proper."

The contention of appellants that the parties have a right to make any contract not prohibited by law, and hence the right to embrace in a mortgage clauses pledging the rents and agreeing that the court shall appoint a receiver upon default *as a matter of right,* loses sight of the statute which denied the power of a mortgage to convey away the mortgagor's right of possession. These clauses must be interpreted in the light of the statute, and the mortgagor's possession must be respected until foreclosure and sale, unless meanwhile the equitable rights of the mortgagee require the interposition of a court of equity to protect the security by way of injunction or receivership. This applies to the rents and profits as well as to the property mortgaged. Where the rents and profits are expressly made

a part of the security, and the mortgagor is receiving them but refusing to apply them to the mortgage debt, which he is allowing to go in default, thus dissipating a part of the security while allowing the debt to increase, a court of equity should appoint a receiver unless the mortgagor makes it clear that the real property covered by the mortgage will sell for enough to pay the debt and charges due the mortgagee and thus affords ample and entirely adequate security. Having voluntarily pledged the rents and profits as part of the security, a mortgagor in default who is misapplying them should not be heard to obpect to their being impounded by the court pending foreclosure proceedings, regardless of his solvency, unless he satisfies the court that the remaining real estate security is entirely adequate, and that there is no equitable need to disturb the possession accorded him by the statute, or gives security to account for such rents and profits. As to the question of insolvency, he should not be heard to say that while he has specifically pledged the rents and profits, a receiver should not be appointed because he is solvent and has other property upon which the complainant mortgagee could levy an execution. Having expressly given a lien on the rents and profits of the mortgaged property, he has no right to require the mortgagee to look to other property for the enforcement of the payment of mortgage debt, while he wastes and destroys the security specifically pledged. He has estopped himself from so doing by his written contract, and will not be heard to object to a receivership unless he first assumes and bears the burden of satisfying the court that the corpus of the estate is ample security to protect the rights of the mortgagee, or gives security approved by the court to properly account for such rents and profits.

In the light of the principles above outlined, we think that in the case at bar, if the chancellor had granted

the application for a receiver, his action, if appealed from, should have been affirmed, but, on the other hand, in view of the allegations of the sworn answer attacking the *bona fides* of the second mortgage, alleging that it had been fraudulently procured and that the complainants had taken assignments thereof with notice of such alleged infirmities, we hardly feel authorized to hold that the learned chancellor was guilty of an abuse of discretion in denying such application under those circumstances, in the absence of the production of some evidence before him which would satisfy him either as to initial validity of the mortgage or that the complainants had acquired the same as *bona fide* purchasers without notice of such infirmities. The rule that a party is not entitled to have a receiver appointed unless there is strong reason to believe that he will recover, has already been alluded to. This is said without any intention of pre-judging or prejudicing any action that has been or may be taken in the court below as to the sufficiency of such answer, either in form or substance. As to that question we intimate no opinion. While the answer was filed in the clerk's office two days before the order of the chancellor was rendered, the record does not show whether it was ever presented to the chancellor or considered by him. But the record fails to show that it was not so presented and considered; and if it was, whether well or illy pleaded, it makes certain charges of fraud and bad faith which may have influenced the Chancellor, in the exercise of his discretion, to refuse the application of complainants for a receiver, and which charges were sufficiently grave to prevent us from holding that the Chancellor clearly abused his discretion.

The order denying the appointment of a receiver will therefore be affirmed, but with directions that the chancellor permit complainants to review their application for

the appointment of a receiver, if they so desire, such new application to be considered and adjudicated in harmony with the views above enunciated.

Affirmed with directions.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.