700 So.2d 38 (1997)
ALAFAYA SQUARE ASSOCIATION, LTD., etc., Appellant,
v.
GREAT WESTERN BANK, etc., et al., Appellee.
No. 96-445.
District Court of Appeal of Florida, Fifth District.
September 2, 1997.
Rehearing Denied October 8, 1997.
*39 Margaret A. Wharton of Margaret A. Wharton, P.A., Oviedo, for Appellant.
Jeffrey Gilbert of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quental, P.A., Fort Lauderdale, and Elliot H. Scherker of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for Appellees WHC-One Investors, L.P., WHC-One Investors, Inc., and General Electric Capital Corporation.
No appearance for Appellee Great Western Bank.

ON MOTION FOR REHEARING AND/OR EN BANC REVIEW
ANTOON, Judge.
Appellees have filed a motion for rehearing and/or en banc review of our opinion dated February 7, 1997. We grant the motion, and accordingly withdraw our previous opinion and issue this opinion in its stead.
In this mortgage foreclosure case, Alafaya Square Association, Ltd. (Alafaya), appeals the trial court's order appointing a receiver.[1] We reverse because there was no showing that Alafaya wasted or impaired the secured real property.
Alafaya owns a shopping center in Seminole County. The property is encumbered by a mortgage in favor of the appellee, WHC-One (WHC). In an agreement modifying the original mortgage, Alafaya agreed to the appointment of a receiver in case of default. When the loan matured, Alafaya failed to pay the balance on the note and WHC sued to foreclose the mortgage. The foreclosure complaint included a request for the appointment of a receiver.
After the foreclosure suit was filed, WHC moved the trial court to sequester the rents received from the tenants of the shopping center. In March of 1995, the trial court granted the motion pursuant to section 697.07, Florida Statutes (1995). Since then, all rents have been deposited into an escrow account and monthly accountings of income and expenses have been provided to WHC. The record does not reveal any objection to the monthly accountings. Importantly, Alafaya lost power as a result of the order to expend funds from the escrow account without the approval of the trial court.
In August of 1995, Alafaya contacted WHC following a request for repairs by Publix, the anchor tenant, and requested use of funds from the escrow account to paint the shopping center and to repair the parking lot. Having received no response, Alafaya filed a motion with the trial court seeking permission to expend the requested funds. Thereafter, Alafaya requested WHC's consent to withdraw funds from the escrow account to pay the real estate taxes on the property. Again no answer was received from WHC.
In response to Alafaya's motion to expend funds for repair and maintenance, WHC filed a motion for appointment of receiver alleging an "apparent waste to the property."
At the hearing on the motion for appointment of receiver, Monte Morrow, asset manager for the mortgaged property, testified on behalf of WHC:
Q: Are you aware that they requested [Alafaya] to do some work at the Center?
A: Yes, I am.
Q: What work was, to your knowledge, has Publix requested [Alafaya] to perform at the Center?
A: They have requested some painting; and I guess some repair on the outside, exterior of the structure, as well as repair the parking ... the parking lot.
Q: Are you aware from correspondence that [Alafaya] has provided to us when Publix first requested those repairs?
A: I think originally it was in April, 1995.
* * * * * *
Q: Has [Alafaya] notified J.E. Robert Companies that Publix is requesting repairs of the supermarket at the Shopping Center?
A: Yes.

*40 Q: What has [Alafaya] notified you that Publix wanted done?
A: [Alafaya] has notified us that they need repair of the parking structure or parking lot; and painting and patching of the front of the exterior building.
Q: Are you aware ... or has [Alafaya] done anything about that, to your knowledge?
A: To my knowledge, no.
* * * * * *
A: Is there any other detrimental effect to the property?
Q: Yes.
A: Well, upon my inspection today I found the property very poorly maintained overall; not just specifically for the Publix Grocery Store and the parking lot, but the overall appearance of the building, it was very poor. The landscaping was not being well kept up. I saw rust stains on the outer edges of the building, I mean there was a large amount of deterioration.
On cross-examination, Morrow acknowledged that WHC had not authorized payment of the delinquent 1995 taxes.
The trial court also heard the testimony of Charles Mitchell, a professional property manager, who stated that he had observed that the property was in good shape and had an average rate of occupancy. Finally, the trial court heard from Harvey Taylor, one of Alafaya's principals, who testified that he had requested WHC's consent to expend escrow funds but had received no response. Based upon review of this evidence, the trial court granted WHC's motion for the appointment of a receiver.
On appeal, Alafaya challenges this ruling, arguing that the evidence failed to establish that Alafaya had caused the property to be wasted or impaired and therefore was insufficient to support the appointment of a receiver. In response, WHC first maintains that there was sufficient evidence of waste. Secondly, it argues that the mortgage modification agreement provided for the appointment of a receiver upon default, thereby creating a presumption of entitlement to a receiver which could be overcome only by a showing that the value of the mortgaged property was in excess of the amount owed and that Alafaya failed in this regard.
The appointment of a receiver in a foreclosure action is not a matter of right. Rather, it is an extraordinary remedy which must be exercised with caution as it is in derogation of the legal owner's fundamental right to possession of his or her property. Barnett Bank of Alachua County v. Steinberg, 632 So.2d 233, 234 (Fla. 1st DCA 1994). The role of a receiver is to preserve the value of the secured property. Id. at 235. Although the appointment of a receiver is within the discretion of the trial court, it is an abuse of discretion to make such an appointment in the absence of a showing that the secured property is being wasted or otherwise subject to serious risk of loss. Atco Construction & Development Corp. v. Beneficial Savings Bank, 523 So.2d 747, 750 (Fla. 5th DCA 1988).
We agree with Alafaya that the evidence in this case does not constitute waste or impairment. The only possible waste referred to in the testimony was the disrepair to the parking lot and the exterior paint on the building. The record demonstrates, however, that Alafaya took reasonable and timely action in requesting that WHC release sequestered funds from the escrow account for these needed repairs. Ironically, WHC asserts that Alafaya's failure to make the necessary repairs constitutes waste. We reject this argument as spurious since such failure was a direct result of WHC's refusal to authorize use of the sequestered rent.
With regard to the real estate taxes, the record establishes that the rental payments from Publix contained a pro rata share of real estate taxes. These funds had been deposited in the escrow account and therefore the only impediment to the payment of the taxes was WHC's refusal to consent.
As noted above, WHC also argues that in the mortgage modification agreement Alafaya agreed to the appointment of a receiver upon default, and therefore, Alafaya had the burden of proof with regard to appointment of a receiver. WHC further argues that in order for Alafaya to meet its *41 burden, Alafaya must show that the value of the property exceeds the entire debt. This is an accurate statement of the law; however, it applies only when the mortgagor is receiving rent which would otherwise serve as additional security for the loan.[2]See Florida Reinvestment Corp. v. Cypress Savings Association, 509 So.2d 1352 (Fla. 4th DCA 1987). In the instant case, the rents have been sequestered leaving Alafaya with no control over the incoming rents. Moreover, Alafaya did not refuse to apply the rents to the mortgage balance. Under these circumstances, Alafaya is not required to establish that the value of the property exceeded the debt in order to avoid the appointment of a receiver.
The facts of this case do not justify the extraordinary remedy of receivership. The rents have been sequestered by separate order and there is no evidence that the mortgaged property is being wasted. Accordingly, we reverse.
REVERSED.
DAUKSCH, GOSHORN and THOMPSON, JJ., concur.
PETERSON, J., concurs specially with opinion.
HARRIS, J., dissents with opinion, in which GRIFFIN, C.J., and COBB and W. SHARP, JJ., concur.
PETERSON, Judge, concurring specially.
I agree with Judge Antoon's opinion. I note, however, that litigating the issue of whether to appoint a receiver would be greatly simplified if only two matters need be shown: default and a provision in the parties' agreement stipulating to the appointment of a receiver in the case of a default. But see, e.g., Boyd v. Banc One Mortgage Corp., 509 So.2d 966, 967 (Fla. 3d DCA 1987) (error to appoint receiver, notwithstanding parties' agreement to do so, "without testimony, sworn pleadings or an affidavit demonstrating a show of `waste' which impairs the equity of [the] security"). I also write further to suggest, or clarify, that, irrespective of whatever difference exists between the value of the mortgaged property and the amount of the outstanding mortgage,[1] the receiver was improperly appointed in this case because no showing was made that the asset, by continuing to be in the mortgagor's possession, was "being wasted or otherwise subject to serious risk of loss." Atco Constr. & Development Corp. v. Beneficial Savings Bank, F.S.B., 523 So.2d 747, 750 (Fla. 5th DCA 1988). Any waste in this case is properly laid at the doorstep of the mortgagee because the mortgagor's attempt to reach a portion of the $900,000 in escrowed rental proceeds to pay taxes and provide maintenance has been thwarted by the mortgagee. But for that frustration, the mortgagee in this case would have no basis to allege waste.
HARRIS, Judge, dissenting.
I respectfully dissent.
In analyzing the issue on appeal, we are confronted with three interrelated legal principles:
(1) Since the parties have the constitutional right to contract, unless their agreement is contrary to law or public policy, the courts should enforce the contract.
(2) The decision as to whether to grant the appointment of a receiver is within the "sound judicial discretion" of the trial court.
*42 Assuming Canakaris applies, such discretion should not be overturned on appeal if any reasonable judge could agree with the trial court's action.
(3) The parties may not by contract bind the court in the exercise of its discretion.
How these legal principles play out in any particular case, of course, depends on the underlying facts of that case. Here, appellant borrowed $15,000,000 from the bank. When the loan matured without payment, the bank sought foreclosure and the enforcement of the assignment of rents and the appointment of receiver provisions of the mortgage.[1] The trial court, in response to the bank's motion, sequestered the rents received from the mortgaged property and required that such proceeds be deposited into an interest bearing account. The funds could be withdrawn only on the signature of both parties or by court order. After appellant was unable to get the approval of the bank, it requested that the court order the release of sufficient funds from the sequestered account to do maintenance work and to pay taxes. When the appellant filed this motion, the bank moved forward on its application to have the receiver appointed. The bank relied both on the assertion that appellant had contracted away its right to oppose such appointment and that, in any event, waste had occurred in that, according to appellant's own motion requesting funds, the parking lot needed resurfacing and the buildings needed painting. The bank objected to turning over money from the escrow account to appellant because appellant had been receiving "$5,000 to $6,000 per month" in fees, a portion of which were to be applied to maintenance. It was the bank's position that if such money was to be spent from its security fund for the maintenance of the property, then such spending should be supervised by a receiver and not released to a defaulting party who had previously failed to properly apply a portion of its fees to maintenance. The court, after hearing, found that the loan was in default, that waste was occurring to the mortgaged property, that the value of the mortgaged property was worth less than the outstanding debt, that appellant had agreed to the appointment of a receiver, and that the preservation of the property required such appointment.
The controlling case seems to be Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241 (Fla.1930). The mortgage in that case, as it does herein, contained a provision both for the assignments of rents and the appointment of a receiver. The lender in that case asserted an absolute contractual right to the appointment of a receiver contending that the court was obliged to enforce the contract unless it was held to be contrary to law or court rule. The lender, in a fall-back position, asserted that even if the court held that the contract could not bind the court, still the parties' agreement should be accorded considerable weight and the party contractually agreeing to such appointment should not be heard in opposition.
The Portland court rejected the lender's contention that the parties could, by contract, bind the court in the exercise of its discretion, but it agreed with the lender that such contract should nevertheless be given great weight in determining which party should have the burden of proof as to the value of the mortgaged property. The court stated:
Land cannot run away, and buildings may be kept insured. Hence there is generally good reason for denying a receiver of mere real estate unless waste is being committed, or there be insolvency of the mortgagor and inadequacy of the property as security. But the mortgagors, even after default, can collect the rents, and dissipate them, and the mortgagees are powerless to prevent it, although the mortgage expressly pledges the rents as part of the security, unless a receiver be appointed to impound the rents pending the foreclosure and then subject to the orders of the court.
* * * * * *
But the stipulation should certainly relieve the mortgagee of the burden of proving that the property, exclusive of rents and *43 profits, is insufficient security. Before a receiver should be denied, when there is such a stipulation, the mortgagor should very clearly show that the property, exclusive of rents and profits, is ample security. Although supported by judicial authority, the theory that a receiver will not be appointed by virtue of such a stipulation alone has objectionable features. Notwithstanding the above-mentioned judicial authority, it is the opinion of the writer that such a stipulation should entitle the mortgagee to a receiver, unless it is shown or appears in the case that the mortgaged property, exclusive of rents and profits, is ample security for the debt.[2]
The Portland court also seems to have agreed with the lender's argument that a contract which provides for the assignment of rents and the appointment of a receiver should be given great weight by the court and might itself justify the appointment of a receiver in some instances. The court held:
[W]here the mortgage expressly pledges the rents and profits in addition to the property, as security for the payment of the debt, such a provision might in many cases be properly considered by the courts as authorizing the exercise of the discretionary power of appointing a receiver where without such express agreement a receiver would be denied ... when the mortgage expressly gives a lien upon the rents and profits and consents to the appointment of a receiver upon default, such stipulation should be accorded considerable weight by the courts, and will in many cases afford good grounds for the appointment of a receiver where without them a receiver might not be appointed.
The court's position on the parties' agreement for the appointment of a receiver seems analogous to the position taken by the courts in negotiated plea agreements. Even though the defendant and the State enter into an agreement by which the defendant pleads guilty in exchange for a recommendation by the State as to a certain sentence, the court is not bound to accept the State's recommendation and may sentence the defendant to whatever it deems appropriate within the statutory or guideline limits. Or the court may very well decide that the recommendation is reasonable and sentence accordingly. Regardless of the court's action, the defendant is bound by his agreement (provided the State lives up to its obligations under the agreement) and will not be permitted to question the sentence on appeal.
In our case, a modification of the mortgage was entered into at the request of the borrower. This modification expressly provided:
Borrower hereby agrees that, in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to the following ...
8.1.1. Right to Appointment of Receiver. If an Event of Default shall have occurred under the Loan Documents: (a) Lender, to the extent permitted by law and without regard to the value or occupancy of the Property, or the solvency or insolvency of the Borrower, shall be entitled ... to the appointment of a receiver ...; and (b) Borrower hereby expressly consents to the appointment of a receiver and waives any right to object to such appointment.
Since the borrower failed to convince the court that the bank had breached its obligations under the modification agreement, and since the court exercised its discretion to accept the stipulation of the parties, appellant should not be heard to complain because its contract was enforced. The borrower agreed to a receiver and received consideration for that agreement. Its position now is that it should be permitted to "eat [its] cake and have it."[3] This position is inconsistent with Portland which clearly indicates that if the court should honor such an agreement, it should be affirmed on appeal.
*44 Although the Portland court upheld the denial of the appointment of a receiver in that case, it did so because the outstanding allegations of fraud on the part of the lender might have influenced the court in the exercise of its discretion. But the court expressly held:
In light of the principles above outlined, we think that in the case at bar, if the chancellor had granted the application for a receiver, his action, if appealed from, should have been affirmed.
In our case, the trial court did grant the application for a receiver based on findings that the borrower agreed to it, that the loan was due and unpaid, that the property was subject to waste, and most importantly, particularly under the Portland analysis, the value of the property was less than the outstanding debt. I would affirm the trial court.
GRIFFIN, C.J., and COBB and W. SHARP, JJ., concur.
NOTES
[1] This court has jurisdiction under Florida Rule of Appellate Procedure 9.130(3)(D).
[2] This standard was announced in Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241 (1930), which the parties agree is the leading case regarding the appointment of receivers in mortgage foreclosure actions. Baumgartner does not support WHC's position. It merely provides:

When the rents and profits are expressly made a part of the security, and the mortgagor is receiving them, but refusing to apply them to the mortgage debt, which he is allowing to go in default, thus dissipating a part of the security while allowing the debt to increase, a court of equity should appoint a receiver unless the mortgagor makes it clear that the real property covered by the mortgages will sell for enough to pay the debt and charges due the mortgagee and thus affords ample and entirely adequate security.
Id. at 249. (Emphasis added).
[1] I have searched the transcript of the hearing on the appointment of the receiver without locating some evidence supporting the trial court's finding that the value of the security is less than the balance of the mortgage.
[1] The foreclosure action was filed after the mortgagor sued the bank to prevent it from seeking full payment because of alleged misconduct. It is only the action taken by the trial court in the foreclosure suit that is presently before us.
[2] Thus the question is not whether the lender has proved that the property is worth less than the debt (as indicated by the footnote to Judge Peterson's concurring opinion), but rather whether the borrower has proved that the property is worth at least as much as the debt. The trial court found that the borrower did not meet this obligation in this case.
[3] George Herbert, The Size [1633].