700 So.2d 60 (1997)
The SEASONS PARTNERSHIP I, a Florida general partnership, Appellant,
v.
KRAUS-ANDERSON, INCORPORATED, a Minnesota corporation, Appellee.
No. 97-00414.
District Court of Appeal of Florida, Second District.
September 19, 1997.
John D. Humphreville and Mark H. Muller of Quarles & Brady, Naples, for appellant.
Mark A. Horowitz of Humphrey & Knott, P.A., Fort Myers, for appellee.
ALTENBERND, Judge.
The Seasons Partnership I (The Seasons) appeals a nonfinal order granting Kraus-Anderson's motion to appoint a receiver in a mortgage foreclosure action. We reverse because Kraus-Anderson, as mortgagee, failed to establish waste or any other equitable basis for this extraordinary remedy.
Kraus-Anderson filed a complaint in November 1996 to foreclose a mortgage on an apartment complex owned by The Seasons and located in Lee County. The mortgage secured a $5,800,000 promissory note that had matured on November 1. With its complaint, Kraus-Anderson filed a motion for either the appointment of a receiver or for the deposit of rents into the registry of the court. The mortgage provided for the appointment of a receiver and contained an assignment of rents clause. Kraus-Anderson requested the court to appoint The Seasons' current property manager as the *61 receiver. The Seasons did not oppose an order to deposit the rents pursuant to section 697.07, Florida Statutes (1995), but it did object to being divested of control of its property. After a hearing, the trial court entered an order appointing a receiver. Neither the order nor the record explains the trial court's reason for this decision, but we suspect that it was influenced by the broad language in the mortgage authorizing a receiver.
The appointment of a receiver, as an equitable remedy, is not a matter of right even if the mortgage so provides and contains an assignment of rents clause. In deciding whether to enforce a mortgage provision for the appointment of a receiver, the trial court must balance the mortgagor's right to own and possess its property against the interests of the mortgagee in protecting its security in the property. See Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241 (1930). See also § 697.02, Fla. Stat. (1995) (providing mortgage is lien on property, not conveyance of title or right of possession). In the often-cited case of Carolina Portland Cement, our supreme court succinctly stated:
Of course, the mere fact that the mortgage pledges the rents and profits, and consents in advance to the appointment of a receiver upon default or breach of conditions, does not mean that upon such a showing alone a court of equity should appoint a receiver as a matter of course. Thus, if it were made to appear that, although in default, the mortgagor was exercising reasonably good care and management of the property and applying the receipts from rentals to the payment of the taxes and the interest on the mortgage debt as far as they would go, a receiver could do no more, and no equitable ground would exist for interfering with the right of possession, which under the statute the mortgagor retains. But where, as in this case, according to the bill, the mortgagor is receiving a large amount monthly in rents, yet failing to keep down the interest on the first mortgage, thus compelling the second mortgagee to pay such interest to prevent foreclosure of the first mortgage, and also failing to pay the installments falling due on the second mortgage, which pledged such rents and profits and agreed to the appointment of a receiver on default, such bill makes out a good case for the appointment of a receiver.
128 So. at 249 (citations omitted).
Following the reasoning of Carolina Portland Cement in this case, we conclude that Kraus-Anderson failed to establish the necessary predicate for the appointment of a receiver under the mortgage provision. The Seasons was applying all of the net rental income to its mortgage debt. At the hearing on Kraus-Anderson's motion, John Holdsworth, The Seasons' current property manager and Kraus-Anderson's proposed receiver, was the only person to testify. According to Mr. Holdsworth, The Seasons was receiving approximately $45,000 to $50,000 every month in net rental income. Mr. Holdsworth applied all of this income to the mortgage debt.[1] The apartment complex had an occupancy rate of 93 to 94 percent, and was doing better than its competition. While The Seasons had some unpaid expenses, including maintenance costs, taxes, and homeowners' assessments, Mr. Holdsworth stated that these bills could have been paid in full with one month's net rental income. Other than paying the past due expenses and making significant capital improvements to the property, Mr. Holdsworth testified that he would not manage the property any differently as receiver than he had as The Seasons' agent.[2] There was no evidence that anyone associated with The Seasons was stealing or misapplying the net rental income. Further, there *62 was no evidence of conditions supporting a determination of waste.
Even though Kraus-Anderson has presented no evidence that The Seasons was jeopardizing its security interest in the property, it nevertheless argues that to avoid the appointment of a receiver, The Seasons must prove the property's value is greater than the entire mortgage debt or to provide additional security for the debt and income. The Fifth District recently rejected this argument in a factually similar case:
WHC's [sic] also argues that in the mortgage modification agreement Alafaya agreed to the appointment of a receiver upon default, and therefore, Alafaya had the burden of proof with regard to appointment of a receiver. WHC further argues that in order for Alafaya to meet its burden, Alafaya must show that the value of the property exceeds the entire debt. This is an accurate statement of the law; however, it applies only when the mortgagor is receiving rent which would otherwise serve as additional security for the loan. See Florida Reinvestment Corp. v. Cypress Savings Association, 509 So.2d 1352 (Fla. 4th DCA 1987). However, in the instant case, the rents have been sequestered leaving Alafaya with no control over the incoming rents. Moreover, Alafaya did not refuse to apply the rents to the mortgage balance. Under these circumstances, Alafaya is not required to establish that the value of the property exceeded the debt in order to avoid the appointment of a receiver.
Alafaya Square Assoc. v. Great Western Bank, 700 So.2d 38 (Fla. 5th DCA 1997) (footnote omitted). Similarly, The Seasons is applying all of the net rental income to the mortgage debt. Moreover, as in Alafaya Square, Kraus-Anderson may invoke section 697.07, Florida Statutes (1995), to enforce the assignment of rents clause in the mortgage and require The Seasons to deposit the rents into the registry of the court.
While recognizing the trial court's discretion in determining whether to appoint a receiver, we nonetheless conclude that the trial court erred in this case. See Carolina Portland Cement, 128 So. at 247; Alafaya Square, 700 So.2d 38. The record reveals no equitable or legal reasons to employ this extraordinary remedy where there is no evidence that The Seasons is wasting the property and there are other methods to protect Kraus-Anderson's security interest without depriving The Seasons of its right of possession.
Accordingly, we reverse the order appointing a receiver and remand for further proceedings.
Reversed and remanded.
CAMPBELL, A.C.J., and FRANK, J., concur.
NOTES
[1] The record suggests that the Kraus-Anderson mortgage is a second mortgage. The holder of any first mortgage is not a party to this action, and we have no information describing a superior security interest in this property. If a first mortgage is relevant to the appointment of a receiver in this case, nothing in the record explains its significance.
[2] The desired capital improvements were not critical to prevent waste. Under the circumstances, the capital for any such improvements would need to be derived from a source other than rents. Nothing in the record establishes the necessity of a receiver in order to obtain investment money for any urgent improvements prior to a resolution of the foreclosure action.