ALTENBERND, Judge.
MB Plaza, LLC, appeals a nonfinal order appointing a receiver in a pending foreclosure action. We affirm the trial court’s decision to appoint a receiver, but we reverse the order appointing the receiver to the extent that its content is far more extensive than that which could be justified by the presentations at the short hearing to appoint a receiver.
MB Plaza owns and operates a commercial shopping center with several tenants. It signed a promissory note that is currently held by Wells Fargo Bank. The note is secured by the real property associated with the shopping center. The mortgage contains an assignment of rents and a provision for the appointment of a receiver with “all of the usual powers and duties of receivers in similar cases” in the event of default. This foreclosure action was filed in May 2010, and Wells Fargo did not seek the appointment of a receiver until late December 2010.
The hearing on the motion for appointment of receiver occurred at the end of a uniform motion calendar. The trial court accommodated the parties with extra time, and the hearing apparently lasted about forty-five minutes. Although a longer evi-dentiary hearing undoubtedly would have produced a better transcript for appellate review, it is clear that the promissory note was in default and that MB Plaza had been collecting rent for many months without remitting the rents to the lender. With declines in property values, the property was no longer adequate security for the note, and MB Plaza did not have funds to pay the property taxes.
MB Plaza argues that it was essential for Wells Fargo to prove that MB Plaza was wasting the property before it could obtain a receivership in this context. In support of this argument, MB Plaza relies on a sentence in Seasons Partnership I v. Kraus-Anderson, Inc., 700 So.2d 60 (Fla. 2d DCA 1997). The sentence states: “The record reveals no equitable or legal reasons to employ this extraordinary remedy where there is no evidence that The Seasons is wasting the property and there are other methods to protect Kraus-Anderson’s security interest without depriving The Seasons of its right of possession.” Id. at 62. While we can appreciate MB Plaza’s argument, we believe it argues for a more restrictive interpretation of the sentence than this court intended.
*207 This court applied the reasoning of Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241, 249 (1930), to the facts in Seasons Partnership in deciding that Kraus-Anderson had not established a basis for an appointment of a receiver. 700 So.2d at 61. Under the guidelines announced in Carolina Portland Cement, the appointment of a receiver is not a matter of right even if the mortgage so provides and contains an assignment of rents clause. See Carolina Portland Cement, 128 So. at 249. “In deciding whether to enforce a mortgage provision for the appointment of a receiver, the trial court must balance the mortgagor’s right to own and possess its property against the interests of the mortgagee in protecting its security in the property.” Seasons Partnership, 700 So.2d at 61 (citing Carolina Portland Cement, 99 Fla. 987, 128 So. 241).
In Seasons Partnership, the existing property manager was doing a good job and was, in fact, the person selected to be the receiver. Notably, rental income from the apartment complex was being properly applied. 700 So.2d at 61. The lender in Seasons Partnership needed to establish a justifiable basis for the appointment of a receiver. Waste would have provided a justifiable basis for the trial court to exercise its discretion by appointing a receiver in Seasons Partnership, but this court did not intend to make waste a condition precedent to such an appointment. Indeed, such a holding would have conflicted with the guidelines in Carolina Portland Cement.
Although we conclude that the trial court had the discretion in this case to appoint a receiver, we are concerned about the content of the order. This order is not a simple order comparable to the order published by The Florida Bar. See Guy Piers Coburn, Extraordinary Remedies, in Creditors’ and Debtors’ Practice in Florida, § 11.40, at 11-33-11-34 (Fla. Bar CLE 3d ed. 2007). Here, the order is nine pages long. It requires a bond of only $5000 while relieving the receiver of liability for any losses except those resulting from gross negligence, fraud, or intentional torts. The receiver is to be compensated at the rate of $150 per hour, with a maximum of $450 per month plus fees and expenses for various activities including the “marketing and sale” of the property. Nothing at the hearing or in the mortgage agreement would suggest that the receiver should have the power to market and sell this commercial property at this stage of the foreclosure proceeding.[1]
Most significantly, the receiver is given the power to negotiate and enter into contracts affecting “any part or all of the Mortgaged Property” with no obvious requirement that the receiver obtain the consent or approval of MB Plaza or the court no matter how extensive the contract. It also allows the receiver to “nullify and/or immediately terminate” existing contracts “in the Receiver’s sole an [sic] absolute discretion” without oversight from the court or MB Plaza. It is troubling that *208 the order appears to give the receiver more unsupervised power than even that given to a trustee in bankruptcy.
This order was not provided to the court or to MB Plaza until the end of the short hearing. The evidence and discussions at the hearing do not justify an order of this scope. MB Plaza sought rehearing concerning the content of the order, and the trial court denied rehearing. Simply stated, nothing in this record supports the notion that this order contains “all of the usual powers and duties” given to a receiver “in similar cases.”[2] The powers and duties actually provided are not justified by the record. We conclude that it was an abuse of discretion to enter an order with these extensive provisions in the context of this case and this hearing.
On remand, if the parties cannot agree upon the content of the order, the trial court shall hold an evidentiary hearing and determine what powers and duties should reasonably be provided to this receiver.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT and KELLY, JJ., Concur.

. Although there may be instances in which the parties to a foreclosure could agree that a sale by receiver would be appropriate, a sale by a receiver is ordinarily improper and, even if authorized, should be carefully watched by the court. See, e.g., Shubh Hotels Boca, LLC v. Fed. Deposit Ins. Cotrp., 46 So.3d 163 (Fla. 4th DCA 2010) (quashing trial court order that allowed and approved a sale by the receiver before final judgment of foreclosure); Fugazy Travel Bureau, Inc. v. State, 188 So.2d 842, 844 (Fla. 4th DCA 1966) (recognizing that "there are instances in which a sale by receiver is expedient and proper,” but nonetheless reversing portion of order that authorized the sale of a promissory note by the receiver and cautioning that a "sale by a receiver should be carefully watched by the court”).

. Wells Fargo did not draft this mortgage agreement. We are not aware of any Florida statute, rule, or case law that establish a receiver’s “usual powers and duties” in cases “similar’’ to this case. The mortgage agreement contains a section that purports to describe rights and authorities of a receiver or the lender in the event of a default. It is unlikely to be binding upon the trial court when the court exercises its discretion to appoint a receiver, especially to the extent that several of the powers described therein might contravene- Florida law if afforded to a receiver and the section creates few, if any, duties.