M. A. SMITH, as Liquidator of Bank of Bay Biscayne, v. J. G. DUPUIS, *et ux.*

157 So. 491.
En Banc.
Opinion Filed November 13, 1934.
Rehearing Denied November 28, 1934.

*John M. Murrell,* for Appellant.

*T. E. Price, Carl T. Hoffman* and *Mitchell D. Price & Charles W. Zaring*, for Appellees.

BUFORD, J.—Appellant filed bill of complaint to foreclose a mortgage of which he alleged that he was the owner and holder as liquidator of the Bank of Bay Biscayne, a banking corporation organized and existing under the laws of the State of Florida, and which had gone into liquidation under the laws of this State.

The mortgage was dated the 15th day of March, 1931, and was to secure the payment of the sum of $88,000.00 with interest at 7% per annum from date, as follows:

"TWENTY-TWO THOUSAND DOLLARS ($22,000.00) on account of the principal of said indebtedness on or before March 15th, 1932;

"SIXTY-ONE HUNDRED AND SIXTY DOLLARS ($6160.00) on March 15th, 1932, being the interest at seven per cent. (7%) to said date;

"TWENTY-TWO THOUSAND DOLLARS ($22,000.00) on account of the principal of said indebtedness on or before March 15th, 1933;

"FORTY-SIX HUNDRED AND TWENTY DOLLARS ($4620.00) on March 15th, 1933, being the interest at seven per cent. (7%) to said date;

"TWENTY-TWO THOUSAND DOLLARS ($22,000.00) on account of the principal of said indebtedness on or before March 15th, 1934;

"THREE THOUSAND AND EIGHTY DOLLARS ($3080.00) on March 15th, 1934, being the interest at seven per cent. (7%) to said date;

"TWENTY-TWO THOUSAND DOLLARS ($22,000.00) on account of the principal of said indebtedness on or before March 15th, 1935;

"FIFTEEN HUNDRED AND FORTY DOLLARS ($1540.00) on March 15th, 1935, being the interest at seven per cent. (7%) to said date";

The mortgage pledged certain described real estate and personal property together with the rents, issues and profits thereof, and in addition thereto contained the following stipulations:

"It is further covenanted and agreed by said parties that in the event of a suit being instituted to foreclose this mortgage, the mortgagee, its successors, legal representatives or assigns shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the mortgaged property, and of all the rents, incomes, profits, issues and revenues thereof, from whatsoever source derived; and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint a receiver of said mortgaged property, all and singular, and of such rents, incomes, profits, issues and revenue thereof, from whatsoever source derived; with the usual powers and duties of receivers in like cases; and such appointment shall be made by such court as a matter of strict right to the mortgagee, its successors, legal representatives or assigns; and without reference to the adequacy or inadequacy of the value of the property hereby mortgaged, or to the solvency or insolvency of the mortgagors, their heirs, legal representatives, successors or assigns, and that such rent, profits, income, issues and revenues shall be applied by such receiver to the payment of the mortgage indebtedness, costs and charges, according to the order of such court."

"That if any of the said installments herein specified due or payable by the terms hereof in liquidation of said note, or any sum or sums of money due or payable by virtue of this instrument, be not promptly and fully paid when the

same become severally due and payable, or within thirty days thereafter, without demand or notice, or if each and every the stipulations, covenants, agreements and conditions of the said promissory note, and of this deed, any or either, are not duly and promptly performed, complied with and abided by, the said entire aggregate sum mentioned in this instrument and the said promissory note then remaining unpaid, with interest accrued, shall become due and payable forthwith or thereafter at the option of the mortgagee, its successors, legal representatives or assigns, as fully and completely as if said aggregate sum and accrued interests were originally stipulated to be paid on such day, anything in the said promissory note, or herein, to the contrary notwithstanding."

The bill of complaint was sworn to. Amongst other things, it prayed for a receiver to take charge of the property and to preserve the same and that the receiver be authorized to impound the profits derived from the operation of the property pledged in the mortgage after payment of expenses of operating the business and past due taxes, and other necessary expenses for the protection and preservation of the mortgaged property.

It appears from the record that a stipulation was entered into between counsel that the defendant, J. G. DuPuis, be appointed temporary receiver pending a hearing on the application for receiver. An order was so made appointing the defendant, J. G. DuPuis, receiver without bond.

The application for receiver afterwards came on for hearing. Voluminous testimony was taken after which the court entered an order vacating the former of July 20th appointing J. G. DuPuis temporary receiver and denied application for appointment of receiver *pendente litem*.

From this Order appeal was taken.

The record shows that no payment had been made on mortgage debt, either of principal or interest, and that while the operation of the mortgaged property had yielded large income and profits practically all of such income and profits had been expended in betterment and improvement of the mortgaged property which consisted of a dairy business located on six hundred and odd acres of land, a herd of fine cattle, dairy barns and milk and ice-cream plants.

The record further shows that during the first six months of 1934 the net profits realized from the operation of the mortgaged property was $33,262.40. But the mortgagors did not apply any of this profit, although it was solemnly pledged therefor, either to the payment of interest or of principal on the mortgage debt.

There is a difference between the stipulation which we have under consideration in this case and that which was treated in Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 Sou. Rep. 241. In this case it was stipulated, with reference to the appointment of a Receiver, as follows: "And such appointment shall be made by such court as a matter of strict right to the mortgagee, its successors, legal representatives or assigns, and without reference to the adequacy or inadequacy of the value of the property hereby mortgaged, or to the solvency or insolvency of the mortgagors, their heirs, legal representatives, successors or assigns, and that such rents, profits, income issues and revenues shall be applied by the said receiver to the payment of the mortgage indebtedness, costs and charges according to the order of such court."

In a number of cases referred to in the Baumgartner case the stipulation provided for the appointment of receiver without regard to the solvency or insolvency of the mortgagor. In that case this Court was definitely committed to the proposition that covenants of this character inserted

in a mortgage are valid. In that case Mr. Justice BROWN, speaking for the Court said:

"If, as was held in Pasco v. Gamble, *supra,* in cases of insolvency and inadequacy of the property as security, the mortgages though containing no provision on the subject, will be held in equity to constitute a lien upon the rents and profits, as well as upon the land itself, why may not the parties, by the contract, expressly create such a lien upon the rents and profits which shall attach, and in proper cases be enforced, regardless of the mortgagor's insolvency and in some cases perhaps regardless even of the inadequacy of the property itself as security? We see no reason why the courts should deny the right of a property owner to so create a contract lien upon the rents and profits of his property. It might well become a valuable right when he finds it necessary to borrow money. It is his property, and if he sees fit to encumber it and also its rents, with a lien to secure a debt, we know of no statutory or constitutional provision which prohibits him from so doing. Certainly Section 5725, Comp. Gen. Laws, does not prohibit him from mortgaging the rents any more than the land. It was said in Pasco v. Gamble, quoting Chancellor Knot, that while the mortgagee's common law rights of entry and possession were gone, the mortgage remains as a 'lien by contract.' If the mortgage on the realty is a mere lien by contract, and the pledging of the rents and profits of realty is also a lien by contract, which may be created in the same instrument, why should not the latter be enforced and protected by the courts as much so as the former? And if waste of the real estate security is in proper cases considered a good ground for the court to interpose and by writ of injunction to restrain the mortgagor from committing such waste, why should not the security afforded, under the terms of the contract, by the rents and profits be also pro-

tected, by appointing a receiver in proper cases, to prevent such rents from being wasted and dissipated by a mortgagor in default?"

In that opinion also this Court quoted with approval from 4 A. L. R. 1405, note p. 1416, in part as follows:

"Assuming such stipulations to be valid, it seems clear that the condition of the mortgagor as to solvency is immaterial, as is held in some of the cases discussed hereinafter. The rents and profits may be and often are a very valuable part of real estate. The mortgagee may not desire to resort to an execution against the other property of the mortgagor, assuming him to be solvent. At any rate, where the parties have expressly contracted for a lien upon the rents and profits, there seems to be no valid reason for depriving the mortgagee thereof because of the fact that the mortgagor is solvent, and the debt may be collected by execution on other property of the mortgagor. Nor should the conditions that there must be danger of loss, waste, destruction or serious impairment of the property, sometimes described as conditions precedent to the appointment of a receiver, be regarded as material where there is such a stipulation. The fact that the mortgaged property, exclusive of the rents and profits, is ample security for the debt secured by the mortgage, is of a different character. It is perhaps going too far to treat this fact as immaterial. But the stipulation should certainly relieve the mortgagee of the burden of proving that the property, exclusive of the rents and profits, is insufficient security. Before a receiver should be denied, where there is such a stipulation, the mortgagor should very clearly show that the property, exclusive of the rents and profits, is ample security. Although supported by judicial authority, the theory that a receiver will not be appointed by virtue of such a stipulation alone has many objectionable features. Notwithstanding the above

mentioned judicial authority, it is the opinion of the writer that such a stipulation should entitle the mortgagee to a receiver, unless it is shown or appears in the case that the mortgaged property, exclusive of the rents and profits, is ample security for the debt. Not all judicial authority denies the correctness of this conclusion. In fact, it finds support in many cases. See *infra,* particularly the Illinois decisions, which quite generally sustain such stipulations and give them the effect herein contended for.' "

Further in this opinion Mr. Justice BROWN said:

"While it is our statutory policy to leave the mortgagor in possession until after foreclosure and sale, and equity will enforce this policy until it becomes necessary to subordinate the mortgagee's possession in order to protect the equitable rights of the mortgagee, yet when the mortgage expressly gives a lien upon the rents and profits and consents to the appointment of a receiver upon default, such stipulations should be accorded considerable weight by the courts and will in many cases afford good grounds for the appointment of a receiver where without them a receiver might not be appointed."

And further in the same opinion Mr. Justice BROWN said:

"If the security afforded by a lien upon personal property, given in connection with a mortgage upon realty, may be protected from impairment, without a showing of insolvency and inadequacy of consideration, why not the security afforded by rents and profits of mortgaged realty when likewise expressly pledged as part of the security for the mortgaged debt?"

And further he said:

"Of course, the mere facts that the mortgage pledges the rents and profits and consents in advance to the appointment of a receiver upon default or breach of conditions, does not mean that upon such a showing alone a court of

equity should appoint a receiver as a matter of course. Thus, if it were made to appear that, although in default, the mortgagor was exercising reasonably good care and management of the property and applying the receipts from rentals to the payment of the taxes and *the interest on the mortgage debt as far as they would go,* a receiver could do no more, and no equitable ground would exist for interfering with the right of possession, which under the statute the mortgagor retains. But where, as in this case, according to the bill, *the mortgagor is receiving a large amount monthly in rents, yet failing to keep down the interest on the first mortgage, thus compelling* the second mortgagee to pay such interest to prevent foreclosure of the first mortgage, and *also failing to pay the installments falling due on the second mortgage,* which pledged such rents and profits and agreed to the appointment of a receiver on default, *such bill makes out a good case for the appointment of a receiver.* Cross v. Will County Nat'l. Bank, 177 Ill., 33, 52 No. E. R. 322; Keogh Mfg. Co. v. Whitson, 14 N. Y. 344; Jones on Mortgages, 8th Ed. Sec. 1937." (Italics supplied.)

And so it is that while the complainant does not allege that the security is inadequate or that the defendant is insolvent, the bill does not show that the defendant has violated the pledges contained in the mortgage and has not respected the complainant's lien on the net profits derived from the operation of the business, but has applied those profits to enhance the value of his property. The mortgage was given to secure the payment of a debt in money and the payment of the debt was then duly devolved upon the mortgagor. He agreed to pay interest on the money but he has failed to pay the interest, although the profits which his testimony shows have been derived from the mortgaged property during the first half of 1934 were entirely sufficient to

have paid all past due interest and to have reduced materially the principal debt.

The record shows that the mortgaged property is of a peculiar character which could probably be operated and preserved more successfully by the defendant J. G. DuPuis than by anyone else and, therefore, equity would not allow the property to be taken from the management and control of the defendant and placed in the hands of an inexperienced and uninformed person who would be more likely to create waste than to effectuate a profitable operation.

On the other hand, the record shows that the defendant is deliberately withholding from the complainant the net profits derived from the mortgaged property upon which net profits complainant has a valid lien and which lien could only be made effective for the benefit of the complainant by the intervention of an order of court.

The complainant is entitled to have the benefit of his security according to the contract. That is, he is entitled, default in the payment of interest and principal having occurred, to have the net profits derived from the mortgaged property applied to the payment of the debt and the interest thereon. In his bill of complaint he has only prayed for the impounding of these profits.

The record shows that the complainant was perfectly willing for the defendant, J. G. DuPuis, to remain in possession, control and management of the property but under such directions of the court as would result in the impounding of the profits pending the litigation, to the end that the lien of the mortgage might be impressed upon that fund so that it could not be applied elsewhere.

Sec. 28 of 1931 Chancery Practice Act provides that "Every bill of complaint should be considered to pay for general relief." Therefore, the Chancellor was authorized to grant any relief which accorded with equity and good

conscience as shown by the bill of complaint and the testimony taken in the cause.

The record does not show mismanagement of the property. Neither does it show waste or depreciation due to errors of management. As stated above, the record shows that Dr. DuPuis is probably better qualified than anyone else to conduct the business and, therefore, the Chancellor was justified in refusing to appoint a receiver with the usual powers incident to receivership, but the rights of the complainant demanded that the net profits derived from the mortgaged property pending this litigation and such net profits as might be in the hands of the mortgagors at the time of the institution of the suit, should be impounded to be applied on the debt in accordance with the provisions of the mortgage contract between the parties. This end may be accomplished either by appointing J. G. DuPuis, receiver and requiring him to account for the net profits or by an order requiring the defendants to make stated reports to the court pending this litigation and to deposit the net profits derived from the operation of the mortgaged property in the registry of the court to be impounded there pending final decree. As no relief was granted the complainant in regard to the impounding of the rents, issues and profits of the mortgaged property in the decree denying the appointment of a general receiver should be modified so as to secure to the complainant this relief and benefit.

The cause is, therefore, remanded with directions that the order appealed from be modified so as to conform to the views herein expressed.

It is further ordered that the costs incident to this appeal shall be taxed in equal proportions against the appellant and the appellee.

So ordered.

Davis, C. J., and Whitfield, Ellis and Terrell, J. J., concur.

Brown, J., disqualified.