524 So.2d 1087 (1988)
INTERDEVCO, INC., and Interdevco-Grove Square, Inc., Petitioners,
v.
BRICKELLBANC SAVINGS ASSOCIATION and Hollywood Federal Savings & Loan Association, Respondents.
No. 87-637.
District Court of Appeal of Florida, Third District.
May 3, 1988.
*1088 Squadron, Ellenoff, Mandler, Plesent & Lehrer and Bernard S. Mandler, Miami, for petitioners.
Ellis, Spencer, Butler & Kisslan and Robert Paul Keeley, Hollywood, for respondent Hollywood Federal Sav. & Loan Ass'n.
Dubbin, Berkman, Garber, Bloom & Moriber and Scott Rubin, Miami, for respondent Brickellbanc Sav. Ass'n.
Before HUBBART, FERGUSON and JORGENSON, JJ.

ON MOTION FOR REHEARING
FERGUSON, Judge.
The petitioners, Interdevco, Inc. and Interdevco-Grove Square, Inc., seek reversal of an order appointing a receiver.
Interdevco commenced this litigation against appellee Brickellbanc on a complaint alleging "bad-faith" lending practices, admitting nonpayment on a construction loan, and seeking a restructuring or modification of the loan agreements to recover certain commitment and extension fees. Brickellbanc counterclaimed for foreclosure and for the appointment of a receiver. Appellee Hollywood Federal, a co-lender, filed an intervening complaint for foreclosure and appointment of a receiver.[1]
The subject property is a large commercial and residential mixed-use project called Grove Square. At the time a receiver was appointed the $12 million project was "99.9%" completed, awaiting issuance of a certificate of occupancy after completion of $82,000 in clean-up work and correction of building code violations. A delay in completion of the building was caused by architectural and engineering problems for which the parties were compensated by insurers. *1089 A $1.2 million escrow fund was established from the insurance proceeds which the banks contend was available to complete construction, cure code violations, and make the project marketable. Interdevco disagreed that the insurance proceeds could be used to complete construction and offered no plans for completing construction other than by obtaining additional loans from the respondents:
MR. MANDLER [for Interdevco]: The purpose of the monies, your Honor, is not to be used in the construction of the project. There is a very important distinction the Court has to understand. Those are our monies. There is no question about that.
* * * * * *
THE COURT: You're saying if the money was freed up, the owner would claim it all and it could not go to finish this job?
* * * * * *
THE COURT: Would your client be willing to release, Mr. Mandler, this 1.2 million dollars towards finishing the project?
MR. MANDLER: No.
It is uncontroverted in the record that the market value of the collateral was less than the credit already extended by the banks. For that reason Hollywood Federal indicated that it would not put more money into the project.
Based on the testimony at the hearing where the respondent's witnesses and an Interdevco principal gave testimony the court concluded:
Gentlemen, I think I've heard sufficient testimony from the presentation of the [counter] plaintiff's two witnesses to make a determination that the building is not going to get complete without help from the court and help from the court can come only from a receiver.
Clearly it was Interdevco's refusal to permit use of the escrowed insurance proceeds to complete construction that caused the court to appoint a receiver while Interdevco's bad-faith lending claim and the bank's counterclaim for foreclosure remained pending.
Protracted litigation that postpones a foreclosure proceeding where the borrower is in default is considered a good reason for appointing a receiver. Federal Land Bank of Columbia v. Evans, 106 Fla. 560, 143 So. 403 (1932). Other jurisdictions have recognized the propriety of appointing a receiver to complete construction as a means of protecting the collateral. Pemberton Lumber & Millwork Indus. v. William G. Ridgway Constr. Co., 38 N.J. Super. 383, 118 A.2d 873 (Ch.Div. 1955). In a case from this district a receiver was appointed to complete construction during the pendency of a foreclosure action without the consent of the mortgagor. Merritt v. First Nat'l Bank of Miami, 251 So.2d 329 (Fla. 3d DCA 1971). The propriety of the appointment was not an issue in Merritt.
In this case, however, it cannot be said that the trial court abused its discretion in appointing a receiver and authorizing the issuance of receiver certificates to complete construction. The record indicates that the borrower is in default; the market value of the collateral, in its unfinished condition, is less than the amount of the mortgage loans; the foreclosure proceeding will be protracted due to the borrower's claims that the mortgage contract should be reformed; the collateral is improved realty which cannot be marketed because it is in an incomplete state; and an escrow fund which could be used to complete construction cannot be used for that purpose because of the defaulting borrower's claim to the funds. Appointment of a receiver rests in the discretion of the court subject to being set aside only if shown to be so arbitrary, unreasonable, or so unjust as to amount to an abuse of discretion. Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241 (1930). Such an abuse is not shown in the record.
The court order of February 17, 1987, appointed a receiver with powers not only to complete construction but also to "market and contract to sell or lease all or part of the subject property." No equitable grounds are shown for interfering *1090 with the petitioners' rights to possess and market the property after construction is completed. There has been no showing that Interdevco  Grove Square is insolvent or otherwise unable or unwilling to market the property. Although the appointment of a receiver is proper where necessary to preserve the property from irreparable loss or destruction, where, as here, there is no evidence that the danger will extend beyond the completion of construction, the appointment of a receiver to market the project is not justified. Further, the record is devoid of the requisite strong showing that the respondents  as the parties requesting that the receiver's duties include marketing the commercial-residential building after construction is completed  will prevail in the underlying foreclosure litigation. Carolina Portland Cement Co. v. Baumgartner, 99 Fla. at 1006, 128 So. at 248 (citing Apalachicola N.R. Co. v. Sommers, 79 Fla. 816, 85 So. 361, 362 (1920)).
Affirmed in part, reversed in part, and remanded.
HUBBART, J., concurs.
JORGENSON, Judge, concurring in part, dissenting in part.
I agree that the trial court properly appointed a receiver to supervise the completion of Grove Square. I dissent from that portion of the majority's opinion which limits the propriety of the receiver's appointment to the completion of the project. If the trial court did not abuse its discretion in appointing a receiver to oversee the completion of the project, then it was not an abuse of discretion to have the receiver ensure the project's viability through the court's directive to "market and contract to sell or lease all or part of the subject property." Generally, a receiver is charged with the duty of receiving and preserving the property in litigation. 44 Fla.Jur.2d, Receivers § 1.
Significantly, the merits of Interdevco's claim against Brickellbanc for its "bad faith" lending practices is not the subject of this appeal. Interdevco has made no showing as to why its marketing of Grove Square would enjoy greater success than marketing under the receiver's auspices. In the event that Interdevco were able to prevail on its bad faith banking practices action, Interdevco could then seek recovery from the banks for its loss of profits due to the receiver's marketing of the project.
The majority's assertion that "[n]o equitable grounds are shown for interfering with the petitioner's rights to possess and market the property after construction is completed" ignores the fact that the petitioners are borrowers in default. The banks' position would be further jeopardized if the petitioners were permitted to market the property which presently has a market value lower than the amount of the loan. Interdevco's refusal to apply the escrow fund toward the project's completion necessitated judicial intervention, see Interdevco, Inc. v. Hollywood Fed. Sav. & Loan Corp. Ass'n., 523 So.2d 773 (Fla. 3d DCA 1988), and negated any equitable right which it may have had to market the building. In my view, these facts support the reasonableness of the trial court's conferring on the receiver the authority to supervise the ultimate disposition of the subject property.[2]
NOTES
[1] Interdevco, Inc. and Interdevco-Grove Square, Inc. sought review by a Petition for Writ of Certiorari. We have jurisdiction pursuant to Rule of Appellate Procedure 9.130(a)(3)(c)(ii) to review a nonfinal order appointing a receiver to take immediate possession of property. Florida Reinvestment Corp. v. Cypress Sav. Ass'n, 509 So.2d 1352 (Fla. 4th DCA 1987); Thunderbird, Ltd. v. Great Am. Ins. Co., 470 So.2d 2 (Fla. 1st DCA 1985). We treat the case as if the proper remedy, appeal, had been sought. Fla.R.App.P. 9.040(c).
[2] The majority's reliance on Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241 (1930), and Apalachicola Northern R. Co. v. Sommers, 79 Fla. 816, 85 So. 361 (1920), for the proposition that, in order to merit appointment of a receiver, the banks are required to demonstrate that they will prevail in the underlying mortgage foreclosure is misplaced. Carolina Portland establishes only that "a receiver should not be appointed where it is apparent that the party applying will not be entitled to recover." Id., 128 So. at 248. This principle does not pertain to the instant case where Interdevco is in default on its loans from Brickellbanc and Hollywood Federal. Apalachicola demands only that a party petitioning for the appointment of a receiver show a clear legal claim or lien upon the property in controversy. Such a showing has been made by the banks in this case.