**In re PUNTA GORDA ASSOCIATES,
a New York limited partnership,
Debtor.**

**Bankruptcy No. 92–578–9P1.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Feb. 11, 1992.

Jeffrey A. Aman, Tampa, Fla., for debtor.

Donald H. Whittemore, Tampa, Fla., for B.G. Smith, receiver.

Lynn James Hinson, Orlando, Fla., for Federal Deposit Ins. Corp.

## ORDER ON EMERGENCY MOTION TO PROHIBIT USE OF CASH COLLATERAL AND EMERGENCY MOTION DIRECTING TURNOVER OF PROPERTY OF THE ESTATE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the related matters under consideration are two Motions, the first filed by Punta Gorda Associates (Debtor) seeking an Order Directing Turnover of Property of the Estate, and the second filed by the Federal Deposit Insurance Corporation (FDIC) seeking an Order to prohibit the use of cash collateral. A brief discussion of the relevant facts as they appear from the record will help to put the matters under consideration into proper focus.

The Debtor is the lessee under a long-term lease of a parcel of property located in Charlotte County, Florida owned by Wilkins–Parnell Partnership (Wilkins–Parnell). Wilkins–Parnell land was originally leased by Wilkins–Parnell to Western Inns, Inc. (Western), which in turn assigned the lease to the Debtor. Wilkins–Parnell constructed a hotel on the property, and in conjunction with the construction of the hotel, executed and delivered a mortgage and security agreement to InterFirst Bank Houston, N.A. (InterFirst) as security for payment of a promissory note in the amount of $2,300,000.00. In addition, Wilkins–Parnell also executed and delivered an assignment of leases and rents to InterFirst, as well as a financing statement which was properly filed. It should be noted that the Debtor has no privity with InterFirst, the original mortgagee, nor with its successors, since the Debtor was not party to the mortgage transaction, and the Debtor has no liability to InterFirst or its successors or assignees on the promissory note executed by Williams–Parnell.

First RepublicBank Houston, N.A. (First RepublicBank) was a successor-in-interest to InterFirst, the original owner and holder of the mortgage and the security interest and the assignment of rents and leases. The FDIC then was appointed receiver for First RepublicBank, and subsequently assigned the assets of First RepublicBank to NCNB Texas. Thereafter, the assets were reassigned to the FDIC.

The Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code on January 17, 1992. Before the Debtor filed its Petition of Relief, there was pending in the District Court for the Middle District of Florida a civil suit filed by Woodhull Group, Ltd. and Angst, Inc. against Western and Troy Parnell. During the pendency of the District Court action, B.J. Smith (Smith) was appointed as receiver for the hotel pursuant to an Order entered by the District Court. Since January 25, 1990, Smith has been operating the hotel, paying the expenses, and accumulating all income derived from the operation of the hotel. The receiver's report indicates that he is holding approximately $21,514.00 of net proceeds from the hotel operation attributable to pre-petition operations. Additionally, the receiver is holding approximately $25,000.00 of proceeds attributable to post-petition operations. It is without dispute that the receiver relinquished control of the hotel property and turned over the same to the Debtor, and currently the only property under his control is the funds obtained from the operation of the hotel during receivership.

The FDIC initiated a mortgage foreclosure action in the Circuit Court in Charlotte County, Florida, and obtained a Final Judgment of Foreclosure on December 13, 1991. The Complaint for Foreclosure named several Defendants, including Wilkins–Parnell, the Debtor, and the receiver appointed by the District Court. The Final Judgment of Foreclosure provided that the FDIC holds a lien superior to any claim of, among others, the Debtor. Specifically, the Final Judgment foreclosed all of the interest of the Debtor in, among other property, "all rents, profits, issues and revenues of the Mortgaged Property from time-to-time accruing whether under leases

or tenancies now existing or hereafter created; ..."

These are the facts based upon which the Debtor seeks an Order Directing Smith to turn over to the Debtor all property of the estate, including, but not limited to, proceeds from the hotel operation, and to file an accounting, both pursuant to § 543(b)(2) of the Bankruptcy Code. In contrast, the FDIC seeks an Order of this Court prohibiting the Debtor from using funds currently in possession of the receiver on the basis that it is cash collateral, and also seeks an Order to prohibit the Debtor to use any future income derived from the operation of the hotel facility. Alternatively, the FDIC seeks an Order directing the Debtor to segregate funds obtained from operation of the hotel and to use such funds only upon Court Order.

It is the contention of the FDIC that the Final Judgment of Foreclosure entered in its favor in the Circuit Court in Charlotte County, Florida foreclosed all of the Debtor's interest in the hotel revenues. Additionally, the FDIC argues that it either owns or has a perfected security interest in the hotel revenues by virtue of a series of assignments and a properly-filed UCC–1 statement.

It is the contention of the Debtor that under the controlling law, hotel revenues are deemed to be accounts receivable and not "rents," and inasmuch as the financing statement filed originally by InterFirst fails to specifically include in the collateral accounts receivables, no security interest was perfected which is valid and enforceable against this Debtor by virtue of *Fla. Stat.* 679.402(1). Specifically, the financing statement file on behalf of Interfirst covered, among other collateral, "all rents, profits, issues and revenues of the mortgaged property...." InterFirst did not perfect its security interest in the account receivables generated from the operation of the hotel as required by *Fla.Stat.* § 679.402(1). This, combined with the fact that the Debtor-in-Possession is armed with the voiding powers of a Trustee in bankruptcy pursuant to § 1107 of the Bankruptcy Code, would enable the Debtor to defeat the interest of InterFirst and its assigns in the accounts receivables by virtue of *Fla.Stat.* § 679.301(3).

From the foregoing, it is clear that the FDIC has no interest in the monies generated from the operation of the hotel by the receiver prior to the commencement of a case. It is equally clear that the Final Judgment of Foreclosure did not foreclose the interest of the Debtor in the revenues generated from the operation of the hotel after the commencement of the case, either by the receiver or by the Debtor-in-Possession. This being the case, this Court is satisfied that the revenues generated from the operation of the hotel are not "cash collateral" as that term is defined by § 363(a) of the Bankruptcy Code, and the FDIC has no interest in accounts receivable under consideration.

Several Courts have considered whether hotel revenues constitute "rents" which are subject to a security interest created by a recorded mortgage deed. The majority of jurisdictions have held, and this Court agrees, that hotel revenues are deemed accounts receivables and not rents. *In re Shore Haven Motel Inn, Inc.,* 124 B.R. 617 (Bankr.S.D.Fla.1991); *In re Ashoka Enterprises, Inc.,* 125 B.R. 845 (Bankr.S.D.Fla. 1990). Clearly, the financing statement filed by InterFirst does not include accounts receivable. Thus, inasmuch as the financing statement fails to identify accounts receivable as collateral securing the interest of InterFirst, the successor-in-interest to InterFirst has no security interest in the hotel revenues. See generally *Fla. Stat.* § 679.402(1).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion to Compel Mr. B.G. Smith, Receiver of the Debtor's property, to turn over to the Debtor-in-Possession property of the estate be, and the same is hereby, granted and Mr. B.G. Smith is directed to turn over to the Debtor all of the hotel revenues derived from the operation of Punta Gorda Associates, both before and after commencement of the Debtor's Petition for Relief under Chapter 11 of the Bankruptcy Code. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion to Prohibit Use of Cash Collateral filed by the Federal Deposit Insurance Corporation be, and the same is hereby, denied as moot.

DONE AND ORDERED.