629 So.2d 975 (1993)
ORLANDO HYATT ASSOCIATES, LTD, Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Dollar Dry Dock Bank f/k/a Dollar Dry Dock Savings Bank, et al., Appellee.
Nos. 93-165, 93-443.
District Court of Appeal of Florida, Fifth District.
December 23, 1993.
Richard J. Ovelmen, Gary M. Carman, and Gayle E. Miller, of Baker & McKenzie, Miami, for appellant.
Gregg W. McClosky and George L. Sigalos, of Mattlin & McClosky, Boca Raton, for appellee.
HARRIS, Chief Judge.
The issue in this case is whether the court erred in permitting the mortgagee to apply the income from the mortgaged premises against its debt during the foreclosure proceedings.[1]
Appellant, Orlando Hyatt Associates, Ltd. ("Orlando Hyatt"), borrowed $35,000,000 from Dollar Dry Dock Savings Bank ("Dollar"). The loan was secured by a second mortgage on a hotel located in Kissimmee, Florida known as the Orlando Hyatt Hotel. Orlando Hyatt subsequently executed a mortgage modification agreement which modified the terms of the note and mortgage and, even later, executed additional documents which restructured the original loan. The final obligation was evidenced by a demand note in the amount of $5,000,000, a consolidated replacement promissory note in the amount of $40,000,000, and an amended and restated second mortgage and security agreement.
A separate entity, Hyatt Corporation, operated the hotel pursuant to a management agreement. This agreement provided for a monthly "owner's remittance," which was the amount by which the total funds then in the operating accounts exceeded the amount required to operate the hotel. As further security for the loan modification, Orlando Hyatt executed a Present Assignment of Owner's Remittance Amount in which it agreed "to the absolute and direct assignment" of all its right, title and interest in any owner's remittance due under the management agreement.
Claiming that the mortgage was in default, the FDIC, the successor mortgagee, filed a three-count complaint against Orlando Hyatt, the two guarantors, and the management company, Hyatt Corporation. Count I sought foreclosure, count II sought monetary damages from Hyatt, and Count III sought damages from the two guarantors. Orlando Hyatt filed an answer and counterclaims.
Simultaneously with the service of its complaint, the FDIC also served its Motion Seeking the Appointment of a Receiver and *976 to Compel the Deposit of Rents pursuant to section 697.07, Florida Statutes. In this motion, the FDIC requested "an order of this court ... compelling the deposits of rents, incomes, profits and accounts receivables into the Registry of this court." Orlando Hyatt responded with a motion to strike the motion to compel rents in which it urged that section 697.07, Florida Statutes, is inapplicable to revenues generated from the operation of a hotel.
At the hearing, the trial court agreed with Orlando Hyatt that section 697.07, the assignment of rents statute,[2] does not apply to hotel revenues.[3] During discussion of this issue, counsel for Orlando Hyatt stipulated to the management company's deposit into an escrow account the sum of $500,000, which constituted the accumulated owner's remittance then being held by the management company.
Concerning the income the management company would continue to collect, the court stated:
So really what we're talking about here is whether [the FDIC is] entitled to the equitable intervention at this point of sequestering the revenues of this hotel in some sort of protected or escrow account.
The trial court initially concluded, in part pursuant to the stipulation, that the management company should place the $500,000 into an escrow account and that the parties should devise a formula to determine future excess funds which also should be deposited into the escrow account. The holder of the first mortgage (intervenor Fairfax Corporation) attempted to clarify the court's ruling by emphasizing that it must be paid from the escrowed funds. The FDIC convinced the court that if the first mortgagee was to be paid from the excess funds, then the FDIC should be able to apply any remaining excess funds to its second mortgage.
The court ultimately ordered that the FDIC receive the funds directly and apply them to the first mortgage and, if any excess funds remained, to apply them to its own second mortgage  the subject of the foreclosure action.
Orlando Hyatt contends that neither statutory nor case law permits a trial court in an ongoing foreclosure action to require that hotel revenues from the subject property be paid to the mortgagee before entry of a final judgment of foreclosure. Orlando Hyatt further maintains that its default under the second mortgage is in dispute and that the court's order will prejudice it should it prevail in the mortgage foreclosure action because the hotel would not be able to retrieve the moneys paid to the FDIC other than through an administrative procedure under the Administrative Claims Act. Moreover, the hotel urges, recourse is limited where the FDIC acts as receiver, as in this case, rather than in a corporate capacity.
We agree with Orlando Hyatt and reverse that portion of the court's order that permits the excess funds to be turned over to the FDIC and applied to its mortgage.
The parties and the trial court agree that section 697.07, the assignment of rents provision, does not apply to hotel revenues. This leaves other statutory and Florida case law. Prior to the enactment of section 697.07, Florida courts acknowledged that a mortgagor may pledge rents and profits from realty, but such a pledge does not become practically effective until the court either appoints a receiver or the mortgagee goes into actual possession. White v. Anthony Investment Co., 119 Fla. 108, 160 So. 881 (1935); Carolina *977 Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241 (1930); In re Aloma Square, Inc., 85 B.R. 623 (Bankr.M.D.Fla. 1988). Although this case law no longer applies to long-term rents in light of section 697.07, it still applies to assignment of profits such as hotel revenues.
In this case, the FDIC was not placed in possession of the mortgaged property. However, the court's approval of Orlando Hyatt's stipulation that the management company deposit the accumulated owner's remittance of $500,000 into an escrow account and the court's additional requirement that the management company receive funds, apply a portion of same to the management of the hotel, and disburse the remainder indicates that the court intended to use the management company as a quasi-receiver. The court may, therefore, on remand if it so elects, require the management company to continue depositing future accumulated owner's remittance (perhaps after paying the first mortgage) into the same escrow account based on Orlando Hyatt's assignment of these funds.
The court erred, however, when it ordered that the future owner's remittance be turned over to the FDIC who could then apply a portion of the funds to its own second mortgage during the pendency of the foreclosure. As the supreme court stated in Carolina Portland Cement Co. v. Baumgartner, 128 So. at 248:
It was held in Cone-Otwell-Wilson Corp. v. Commodore's Point T. Co., 94 Fla. 448, 114 So. 232, that usually the object of the appointment of a receiver in foreclosure proceedings is to preserve the security and collect and apply the rents and profits to the payment of the mortgage debt; that the amount thus impounded becomes a part of the mortgage security and remains the property of the mortgagor subject to the equitable rights of the parties, and should ordinarily be applied in advance of sale against the sum found by the court to be due, so that the mortgagor might have that much less money to raise to redeem the property from sale. (emphasis added)
The court in In re Aloma Square, 85 B.R. at 625, explained the rule:
Under Florida law, a mortgage merely creates a lien against the land with the title and right of possession remaining with the mortgagor/owner. Thus, in order to protect a borrower's due process rights, the courts have determined that a mortgagee can acquire possession upon default only through judicial foreclosure and purchase at sale. See Four Star Aviation, Inc. v. United States, 409 F.2d 292 (5th Cir.1969); Snow v. Nowlin, 125 Fla. 166, 169 So. 598 (1936).
Similarly, an assignment of rent clause contained in a mortgage creates only a lien against the rent proceeds. The right to use those proceeds remains with the debtor and the lender succeeds to that right only after judicial foreclosure and sale... . The parties are not permitted to subvert this requirement by entering into a separate assignment of rent agreement, for as long as that assignment secures a debt, it is deemed subject to the rules of foreclosure. (emphasis added).
Although section 697.07 amends this rule as it applies to long-term rents, there is no similar statutory provision governing hotel revenues/profits, and therefore, the rule still applies in cases involving these types of funds.
Both Carolina Portland Cement and Aloma Square stand for the proposition that, no matter how absolute and unconditional an assignment of rents/profits may be, it cannot operate to give the mortgagee a right to such funds before the court has determined the merits of the foreclosure action. In the event the mortgagor prevails in the foreclosure suit, the funds paid in advance but held in escrow are easily retrieved. Had they been paid directly to the mortgagee and applied to the mortgage, retrieval would be much more difficult, a result which is unfair to the mortgagor. If the mortgagee prevails, obviously the funds are readily available to apply to its mortgage.
REVERSED and REMANDED for further action consistent with this opinion.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] We reject the contention that Orlando Hyatt Associates, Ltd. lacks standing to pursue this appeal. We have not considered Orlando Hyatt's due process argument because of our ruling in the appeal.
[2] Section 697.07 provides:

697.07 Assignment of rents.  A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.
[3] In re Ashoka Enterprises, Inc., 125 B.R. 845 (Bankr.S.D.Fla. 1990); In re Shorehaven Motor Inn, Inc., 124 B.R. 617 (Bankr.S.D.Fla. 1991) (revenues from hotel operation are "personalty," not "rents"); In re Punta Gorda Associates, 137 B.R. 535 (Bankr.M.D.Fla. 1992) (same).